ESSELBRUEGGE MERCANTILE COMPANY, Appellant, v. HENRY TROLL, Sheriff of City of St. Louis, Respondent.

St. Louis Court of Appeals, April 4, 1899.

1. **Replevin of Stock of Goods:** SALE: FRAUD: PREFERRED CREDITOR: KNOWLEDGE. If a creditor of an insolvent, takes the goods of his debtor, either as security for or in payment of his debt, and he takes no more property than is reasonably necessary for the purpose intended, the transaction will be good, although the debtor, by means of the conveyance intended to defraud his other creditors, unless such preferred creditor entered into the arrangement, partly or wholly, with the view of assisting in accomplishing such fraudulent purpose.

2. ———: ———: ———: KNOWLEDGE AND PARTICIPATION. It is not sufficient to vitiate the transfer or sale that the creditor had knowledge of the fraudulent designs of the debtor. Held, it must appear that he participated therein.

3. **Independent or Volunteer Purchaser of Goods from an Insolvent:** RULE IS DIFFERENT. In the case of an independent or volunteer purchaser of goods from an insolvent, the sale will be held to be fraudulent as to creditors of the vendor if the purpose of the latter in making the sale, was to hinder or delay creditors and the purchaser knew of such intent.

*Appeal from the St. Louis City Circuit Court.*—HON. HORATIO D. WOOD, Judge.

AFFIRMED.

RASSIEUR & BUDER and J. J. O'DONOHOE for appellant.

The evidence is not sufficient to support a verdict finding the transfer from Noltkamper to the Esselbruegge Mercantile Company to have been fraudulent. Noltkamper had

a perfect right to transfer his property in payment of an honest debt owed by him.  Shoe Co. v. Casebeer, 53 Mo. App. 640; Pierson v. Slifer, 52 Mo. App. 273; Lumber Co. v. Planing Mill Co., 59 Mo. App. 383; Bank v. Shoemaker, 68 Mo. App. 594.  Knowledge that the debtor intends to hinder other creditors will not defeat a preferred creditor who does not participate therein.  Instructions numbered 3, 7 and 10, offered by the plaintiff should have been given. Alberger v. White, 117 Mo. 347-363; Shoe Co. v. Casebeer, 53 Mo. App. 640; Lumber Co. v. Planing Mill Co., 59 Mo. App. 373-383.  Even if Noltkamper intended and actually practiced fraud upon his creditors in making a sale of his property to plaintiff, yet if the latter did not participate in it the purchase must be upheld.  Instructions numbered 1 and 2, given by the court of its own motion, entirely ignore the question of "participation" on the part of plaintiff, and should not have been given.  Alberger v. White, 117 Mo. 347-363; Shoe Co. v. Casebeer, 53 Mo. App. 640; Lumber Co. v. Planing Mill Co., 59 Mo. App. 373-383.  Where the purchaser of goods immediately following the purchase takes actual, open and notorious possession thereof, and holds the same until they are levied upon by the constable at the instance of the vendor's creditors, it is sufficient change of possession.  And the mere fact that in this case Noltkamper remained in the store and possibly assisted in waiting on one or two customers did not make the possession of plaintiff any the less exclusive.  State ex rel. v. Flynn, 52 Mo. App. 236; Bank v. Shoemaker, 68 Mo. App. 592; Pollard v. Farwell, 48 Mo. App. 42; Steppacher v. Saunder, 74 Mo. App. 475.

A. C. & H. B. DAVIS for respondent.

Instructions numbers 3, 7 and 10 offered by the plaintiff were properly refused.  The fault in instruction number

3 is in the words "and participated therein." Frederick v. Algaier, 88 Mo. 598. The fault in the instruction number 7 is in the words "would have participated," *supra*. The fault in instruction number 10 is the words "participated in such intent," *supra*. Instructions numbers 1 and 2, given by the court, were properly given. Where a creditor takes a preference, it is lawful, even though he know that the intent of debtor by so preferring him, is to hinder, delay or defraud his other creditors, and, if he takes no more of the debtor's goods than will fairly pay his claim, he is not liable to the other creditors, unless he actually assists the debtor in his fraud. But where a purchaser of goods knows that the vendor is selling to him in order to hinder, delay or defraud his creditors, then the mere knowledge that such is the intent of the vendor, vitiates the transaction, even though the purchaser pay a fair price. Shelly v. Booth, 73 Mo. 74; Dougherty v. Cooper, 75 Mo. 528; Frederick v. Algaier, *supra*. If a creditor, in addition to securing his own debt by taking an assignment of a reasonable amount of his debtor's property, which he may lawfully do, purchases an additional quantity with a view of assisting the debtor to hinder, delay or defraud his other creditors, it voids the whole transaction, and the law punishes fraud of creditor by remitting the property to the attachments and executions of other creditors and postponing fraudulent creditor to the others. McNichols v. Rubleman, 13 Mo. App. 515; see page 522.

BIGGS, J.—This is an action of replevin for a stock of goods and certain store fixtures. The property was held by the defendant as sheriff. It had been seized by him under writs of attachment against Adolph Noltkamper. At the time of the levy the property was in the possession of parties who claimed to be the agents of the plaintiff. Subsequently this action was begun. The property was taken from the

possession of the defendant and delivered to plaintiff. The plaintiff claimed that he purchased the property from Nolt-kamper on the fifteenth day of February, 1896, at an agreed price of $1,670; that at the time of the sale Noltkamper owed it $693; that in paying for the goods this debt was deducted and that the balance of the purchase money, to wit, $977, was paid to Noltkamper in cash. The levies under the writs of attachment were made on February 17, 1896. The defense was that the alleged sale was made by Noltkamper with the intent to hinder or delay his other creditors; that the plaintiff had knowledge of such intent, and further that the pretended sale was invalid as against the other creditors of Noltkamper for the reason that the possession of the property was not changed but remained in Noltkamper. Upon a finding of the issues for the defendant the jury assessed the then value of the property at $1,670 and the value of the special interest of the defendant therein at $513.80. A judgment was entered in accordance with the verdict and the plaintiff appealed the case to this court.

The court on its motion instructed the jury in substance that if Noltkamper made the sale to plaintiff with the alleged fraudulent intent and that the plaintiff knew of such intent, then the verdict should be for the defendant. On the other hand the plaintiff's instructions (which the court refused) were drawn on the theory that to avoid the sale the plaintiff must have participated in the fraudulent purpose of Noltkamper if the jury found that the sale was made by Noltkamper with a fraudulent intent. If a creditor of an insolvent takes the goods of his debtor, either as security for or in payment of his debt and he takes no more property than is reasonably necessary for the purpose intended, the transaction will be good, although the debtor by means of the conveyance intended to defraud his other creditors, unless such preferred creditor entered into the arrangement partly

Vol. 79 app—36

or wholly with the view of assisting in accomplishing such fraudulent purpose. In such a case it is not sufficient to vitiate the transfer or sale that the creditor had knowledge of the fraudulent designs of the debtor. It must appear that he participated therein. But the rule is different when applied to an independent or volunteer purchaser of goods from an insolvent. In such a case the sale will be held to be fraudulent as to creditors of the vendor if the purpose of the latter in making the sale was to hinder or delay creditors and the purchaser knew of such intent. The law as thus stated is established by many decisions. The question is, to which class ought the present case be assigned. It may be conceded that the plaintiff in making the purchase was not strictly speaking a volunteer, although the testimony of its president justifies the conclusion that the desire to collect plaintiff's debt from Noltkamper did not influence the purchase. The contrary, however, may be inferred, and as it is not favorable to plaintiff's case we will treat the case from that standpoint. Under this view the plaintiff appears in the transaction in the dual capacity of a preferred creditor and a volunteer purchaser. In a case presenting a similar state of facts (Hearn v. Due, No. 7202, not yet reported), we held that the aforesaid rule applicable to volunteer purchasers should govern. We are satisfied with the ruling in that case, and will not recede from it. It follows that the circuit court was right in its charge to the jury, and the objections thereto will be overruled.

It is insisted, however, that there is no substantial evidence that Noltkamper made the sale to plaintiff with a fraudulent purpose, or if he had any such intent that the plaintiff had knowledge of it. Both contentions we think are wrong. In the nature of things the affirmative of such issues is seldom supported by positive proof. Generally the truth of such charges can only be inferred from circumstances. It is shown in this case that Noltkamper was hope-

lessly insolvent; that his numerous debts were past due; that his creditors were pressing him; that the plaintiff was advised of these facts; that the sale was made hurriedly and not in the usual way; that a rough and imperfect inventory was made by Noltkamper and a collecting agent who had the collection of plaintiff's debt; that the plaintiff's president bought the goods upon the representation of the agent and without a personal examination; that after the alleged purchase the business was left in charge of two men who had been clerking for Noltkamper, and that Noltkamper remained about the store and occasionally waited on customers. With such proof in support of the judgment we would not be justified in interfering. In the trial of such causes the trial judges and the jurors are in a much better position than we to judge of the probative force of evidence and of the inferences to be justly drawn from it. They see the witnesses. A look or gesture of a witness or the tone of his voice often characterizes his testimony.

On the question of the change of possession the evidence was conflicting. That introduced by the plaintiff tended to prove that on the day of the sale Noltkamper surrendered the key of the store room to plaintiff's agent; that this agent again left the business in charge of two former clerks of Noltkamper; that Noltkamper's sign was taken down and that Noltkamper had nothing further to do with the business. The evidence for the defendant was to the effect that the sign was not changed and that Noltkamper remained in the store and continued to sell goods to customers. This branch of the case was submitted to the jury under a correct instruction, and as the evidence warranted its submission the plaintiff has no just ground of complaint.

Finding no reversible error in the record, the judgment of the circuit court will be affirmed. All concur.